UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH DOLL,<br><br>        Plaintiff<br><br>    v.<br><br>PENNSYLVANIA STATE POLICE, et al,<br><br>        Defendant | CIVIL ACTION NO. 1:23-CV-506<br><br>(MEHALCHICK, J.) |

## **MEMORANDUM**

This action was commenced upon the filing of a complaint by Plaintiff Kenneth Doll ("Doll") against Defendants Pennsylvania State Police ("PSP"), Trooper Conor Tremaine ("Trooper Tremaine"), and John Doe Supervisory Officers ("Doe Supervisory Officers") (collectively, "Defendants") on March 22, 2023. (Doc. 1). In his complaint, Doll asserts excessive force, supervisory liability, and failure to intervene claims pursuant to the Fourth and Fourteenth Amendments, as well as state law tort claims, arising from Defendants' detainment of Doll. (Doc. 1). Before the Court is a motion for summary judgment filed by Defendant Trooper Conor Tremaine ("Trooper Tremaine") (Doc. 30) challenging Doll's excessive force claims asserted against Trooper Tremaine. (Doc. 1). For the reasons provided herein, Trooper Tremaine's motion for summary judgment will be **DENIED**. (Doc. 30).

I.  **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the parties' statements of material facts and responses thereto.[1] (Doc. 32; Doc. 32-1; Doc. 32-2; Doc. 32-3; Doc. 32-4; Doc. 32-5; Doc. 32-6; Doc. 32-7; Doc. 32-8; Doc. 32-9; Doc. 32-10; Doc. 33; Doc. 33-1; Doc. 37). This case arises from an interaction between Doll and Defendants on October 31, 2022 at the intersection of Black Gap Road and Olde Scotland Road in Franklin County, Pennsylvania. (Doc. 32-6, at 6; Doc. 33, at 2; Doc. 33-1, at 18; Doc. 37, ¶ 5). At approximately 4:57 AM, Pennsylvania State Police Trooper Zilen was responding to and investigating a two-car collision at the intersection of Black Gap Road and Olde Scotland Road when he was severely injured by an SUV that struck him while he was investigating the accident. (Doc. 32, ¶¶ 5-8;

---

[1] Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. The facts have been taken in the light most favorable to the non-moving party with respect to each motion. Further, the Court takes note of Trooper Tremaine's objection to Doll's incorrectly formatted and submitted response to Trooper Tremaine's statement of material facts. (Doc. 37; Doc. 38, at 3). The Court reminds Doll to abide by the Local Rules, which requires a response to a statement of material facts to be formatted in numbered paragraphs, specifically responsive to each fact and admitting or denying each fact. *See* M.D. Pa. Local Rule ("LR") 56.1. According to the Local Rules, the material facts from the movant's statement of facts will be deemed admitted, unless the opposing party specifically disputes that fact in its response. *See* M.D. Pa. Local Rule ("LR") 56.1. Here, although separate counterstatements of fact not directly responsive to the movant's statement of fact, like that submitted by Doll, are not contemplated by the Local Rule, the Court may consider the entire record to ascertain the relevant factual background for this matter, but the Court may assign those additional statements no evidentiary value. *Rau v. Allstate Fire & Cas. Ins. Co.*, No. 3:16-CV-0359, 2018 WL 6422121, at *2 (M.D. Pa. Dec. 6, 2018); *Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Associates*, 39 F. Supp. 2d 517, 519 n.1 (M.D. Pa. 1999); *see also Ball v. Buckley*, No. 1:11-CV-1829, 2012 WL 6681797, at *1 (M.D. Pa. Dec. 21, 2012) (declining to strike counterstatements of fact not directly responsive to the statement of material fact in support of a motion, so that litigation could proceed without the unnecessary delay that would be caused by striking the counterstatements and directing the plaintiff to attempt to file a new counterstatement that more closely adheres to the Local Rules of this Court.).

Doc. 37, ¶¶ 5-6). After the SUV struck Trooper Zilen, Trooper Zilen was laying incapacitated in the middle of Black Gap Road. (Doc, 32, ¶ 7-8). Several other officers, including Trooper Tremaine arrived at the scene to assist Trooper Zilen. (Doc. 32, ¶ 9; Doc. 37, ¶¶ 6-7).

Upon arrival at the scene, Trooper Tremaine directed traffic and communicated with emergency response personnel. (Doc. 32, ¶¶ 9-11; Doc. 37, ¶¶ 6-8). When a tow truck driver arrived at the scene to respond to the initial accident, Doll was in his vehicle driving behind the tow truck. (Doc. 32-6, at 18-20; Doc. 33, ¶¶ 11-12; Doc. 33-1, at 42-44; Doc. 37, ¶¶ 9-16). Trooper Tremaine spoke to the tow truck driver and instructed him to enter the closed emergency area. (Doc. 33, ¶¶ 11-12; Doc. 37, ¶¶ 9-16). Doll, driving slowly behind the tow truck, contends that he saw police vehicles with lights activated but did not see troopers or debris when he approached the intersection behind the tow truck. (Doc. 32-6, at 11-12, 19-22; Doc. 33-1, at 42-44; Doc. 37, ¶¶ 11-15). When the tow truck entered the closed emergency area, Doll proceeded behind him, believing the police presence to be up ahead where the initial collision took place, nowhere near Doll's car as he proceeded through the intersection. (Doc. 32-6, at 11-12, 22; Doc. 33, ¶ 12; Doc. 37, ¶ 14). As he entered the intersection, officers, including Trooper Tremaine began yelling at Doll to stop and banging on his car because he was approaching the area where Trooper Zilen was laying injured in the street. (Doc. 32-6, at 20; Doc. 32, ¶¶ 21-26; Doc. 33, ¶¶ 12-16; Doc. 33-1, at 47-63; Doc. 37, ¶¶ 17-22). Trooper Tremaine then swerved his patrol car in front of Doll's vehicle, exited his patrol car, and also hit Doll's car with his hand. (Doc. 32-6, at 19). Officers perceived Doll's continued driving through the intersection despite the presence of emergency response vehicles and officers yelling to be intentional disobedience of officer orders. (Doc. 32, ¶¶ 22-28). Doll disputes this, contending that it was dark, and he did not know he was being asked to stop until the officers

3

were banging on his car and yelling at him. (Doc. 32-6, at 11-12, 18-19). When officers began banging on his vehicle and yelling, Doll stopped driving, at which point Trooper Tremaine contends he was five feet in front of the spot where Trooper Zilen was laying. (Doc. 32, ¶ 26).

Doll put his car in park and began to open his door when Trooper Tremaine pulled the door fully open and physically pulled Doll out of the car. (Doc. 33-1, at 72). Trooper Tremaine "escorted" Doll to the ground, put him in handcuffs, and put Doll in his vehicle.[2] (Doc. 33-1, at 74-80). Trooper Tremaine testified that he does not recall punching or striking Doll, while Doll testifies that Trooper Tremaine twisted his arm, struck him in the chest, and overtightened handcuffs to the point of "agony," which Doll states that he complained about to Trooper Tremaine. (Doc. 32-6, at 26; Doc. 33-1, at 87-91). Doll remained in Trooper Tremaine's vehicle for 40 minutes until Trooper Tremaine released Doll from the handcuffs and told him he was free to go. (Doc. 32-6, at 29). As a result of the accident, Doll suffered bruises and injuries on his face and arms and received medical treatment for "a lot of swelling" after the incident. (Doc. 32-8; Doc. 32-9, at 2-5).

Doll filed the instant complaint on March 22, 2023 asserting the following counts: Count I – Excessive Force in Violation of the Fourth and Fourteenth Amendments against Trooper Tremaine and Doe Supervisory Officers; Count II – Supervisory Violations of the Fourth and Fourteenth Amendments against Trooper Tremaine and Doe Supervisory Officers; Count III – Failure to Intervene in Violation of the Fourth and Fourteenth Amendments against Trooper Tremaine and Doe Supervisory Officers; Count IV – state law

---

[2] In his testimony, Doll characterizes Trooper Tremaine's removal of him from his vehicle as "grabbing" him by the shirt collar and "thr[owing]" him to the ground while screaming and yelling. (Doc. 32-6, at 21).

assault claim against Trooper Tremaine; and Count V – state law battery claim against Trooper Tremaine. (Doc. 1, at 11-19).

On June 24, 2024, Trooper Tremaine filed a motion for summary judgment seeking summary judgment on Doll's excessive force claims, as well as a statement of facts and corresponding exhibits, and a brief in support. (Doc. 32; Doc. 32-1; Doc. 32-2; Doc. 32-3; Doc. 32-4; Doc. 32-5; Doc. 32-6; Doc. 32-7; Doc. 32-8; Doc. 32-9; Doc. 32-10). On July 1, 2024, Trooper Tremaine filed a supplemental brief in support and supplemental statement of facts. (Doc. 33; Doc. 34). On July 12, 2024, Doll filed a brief in opposition to Trooper Tremaine's motion for summary judgment.[3] (Doc. 35; Doc. 36). On July 26, 2024, Trooper Tremaine filed a reply brief. (Doc. 38). Accordingly, the motion for summary judgment is now ripe and ready for disposition. (Doc. 30; Doc. 32; Doc. 33; Doc. 35; Doc. 35; Doc. 36; Doc. 37; Doc. 38).

## II.    MOTION FOR SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-

---

[3] As noted *supra*, Doll filed a counterstatement of facts, not formatted or filed in accordance with the Local Rules. (Doc. 37).

moving party, and where the non-moving party's evidence contradicts the movant's, then the nonmovant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts that give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife*

*Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

**III.   DISCUSSION**

Trooper Tremaine avers he is entitled to summary judgment on Doll's excessive force claims as a matter of law and on qualified immunity grounds. (Doc. 31; Doc. 34). The Court will address each theory in turn.

A.   DOLL'S EXCESSIVE FORCE CLAIMS

In Count I of the complaint, Doll asserts an excessive use of force claim against Trooper Tremaine. (Doc. 1, ¶¶ 59-64). Trooper Tremaine argues he is entitled to summary judgment on Doll's excessive force claim because no reasonable juror could conclude that his removal of Doll from Doll's vehicle and detainment of Doll constitutes a use of excessive force under the circumstances. (Doc. 31, at 3-13; Doc. 34, at 3). Doll responds that a jury could conclude that Trooper Tremaine used excessive force unreasonable, maliciously, and for the purpose of causing harm. (Doc. 36, at 6-13).

When an "excessive force claim arises in the context of an arrest or a stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Police violate the Fourth Amendment if their use of force "is excessive under objective standards of reasonableness." *Green v. New Jersey State Police*, 246 F. App'x 158, 161 (3d Cir. 2007) (citation omitted). When determining whether a police officer's use of force was reasonable, Courts consider the perspective of a reasonable officer, keeping in mind that circumstances are often "tense, uncertain, and rapidly evolving." *Green*, 246 F. App'x at 161. "How much force is reasonable in effectuating an arrest is based on the 'totality of the circumstances[.]'" *Geist v. Ammary*, 40

F. Supp. 3d 467, 476 (E.D. Pa. 2014). "While this inquiry is highly individualized and fact specific, the Supreme Court has provided three factors to guide us through it: (1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and (3) whether the suspect attempts to resist arrest or flee the scene." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (citing *Graham*, 490 U.S. at 396). These factors are known as the *Graham* factors. Additional considerations are as follows:

> 1) the severity of the crime at issue, 2) the immediate threat to the safety of the officers or others that the suspect poses, 3) whether the suspect is resisting or evading arrest, 4) how "violent or dangerous" the suspect is, 5) the "duration" of the force, 6) whether the force was used in making an arrest, and 7) whether the suspect might be armed, and 8) the number of people with whom the police must contend.
>
> *Geist*, 40 F. Supp. 3d at 476 (citing *Graham*, 490 U.S. at 396).

Considering this totality of the circumstances approach, the Court's reasonableness inquiry is to be "highly individualized and fact specific," and "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Santini*, 795 F.3d at 417; *Graham*, 490 U.S. at 396. Whether the use of force was reasonable is typically a question for the jury. *Jefferson v. Lias*, 21 F.4th 74, 79 (3d Cir. 2021); *see also Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999) ("Since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus by a jury decision to help ensure that the ultimate legal judgment of 'reasonableness' is itself reasonable and widely shared.")

In this case, the alleged use of force involved pulling Doll from his vehicle and detaining him. (Doc. 1, ¶¶ 24-38). Doll testifies that Trooper Tremaine used excessive force

8

by pulling Doll from his car after it was already stopped and Doll was getting out of the car independently, using force to throw Doll on the ground, slamming his arm into Doll's chest and pushing Doll against his vehicle, overtightening Doll's handcuffs, and twisting Doll's arm and body as he detained him. (Doc. 1, ¶¶ 24-38). Forcefully removing an individual from a vehicle, restraining them on the ground, and overtightening handcuffs or twisting the body may constitute an excessive use of force. *See Fry v. Smoker*, No. CIV.A. 11-3015, 2012 WL 1622656, at *5 (E.D. Pa. May 9, 2012) ("The Third Circuit has held that overly tight handcuffs may constitute excessive force.") (citing *Kopec v. Tate,* 361 F.3d 772, 777 (3d Cir.2004)); *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 809 (D.N.J. 2008) ("construing the evidence in the light most favorable to the [p]laintiff, a reasonable jury could find that [an officer] shoving [p]laintiff against the door head first and painfully twisting his arms amounted to excessive force."); *Samuels v. Pocono Mountain Reg'l Police Dep't*, No. 3:13-CV-2922, 2015 WL 10567834, at *6 (M.D. Pa. Dec. 17, 2015), *report and recommendation adopted in part,* No. 3:13-CV-02922, 2016 WL 1221831 (M.D. Pa. Mar. 29, 2016) (denying summary judgment on an excessive force claim to an officer who pulled a driver from his car and detained him with force when the officer perceived the driver to be noncompliant). However, "[t]he Supreme Court has recognized that the 'right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Ickes v. Grassmeyer*, No. CV 3:13-208, 2016 WL 4272358, at *12 (W.D. Pa. Aug. 11, 2016), *aff'd sub nom. Ickes v. Grassmyer,* 704 F. App'x 190 (3d Cir. 2017) (quoting *Graham*, 490 U.S. at 396-97).

There remain questions of material fact as to whether excessive force was used to detain Doll. Doll contends that Trooper Tremaine used excessive force by forcefully removing Doll from his car and throwing him to the ground, making contact with Doll's chest using his

9

arm and pushing Doll against his car, overtightening Doll's handcuffs, and twisting Doll's body. (Doc. 1, ¶¶ 24-38). The evidence in the record, especially the statements in Doll's deposition but also parts of Trooper Tremaine's deposition, confirms that Doll did stop his car and was in the process of exiting it independently when Trooper Tremaine pulled him out, forced him to the ground, and later, slammed his arm into Doll's chest and applied handcuffs.[4] (Doc. 32-6, at 26, 29; Doc. 33-1, at 72, 74-80). The photographic evidence and medical treatment notes confirm that Doll did suffer significant injuries from the interaction, including bruising on his arm, face, and body, and lasting swelling. (Doc. 32-8; Doc. 32-9, at 2-5).

      The record is inconclusive as to whether such force was lawful under the circumstances and whether a reasonable juror could conclude the evidence supports these allegations. In making this determination, the Court looks to the *Graham* factors and the totality of the circumstances. *Geist*, 40 F. Supp. 3d at 476 (citing *Graham*, 490 U.S. at 396). First, Doll was not suspected of committing any severe or violent crime. He was detained for driving his vehicle toward a scene where an injured officer was incapacitated and failing to stop promptly. (Doc. 32, ¶ 26). There is a question of fact regarding whether Doll saw Trooper Zilen and understood that he was being asked to stop. (Doc. 32-6, at 11-12, 19-22; Doc. 33-1, at 42-44; Doc. 37, ¶¶ 11-15). Regardless, it is undisputed that at the time Trooper Tremaine pulled Doll from his car with force, took him to the ground, and applied handcuffs to his wrists, Doll had already stopped his car. (Doc. 32-6, at 11-12, 18-19; Doc. 33-1, at 72). There are additional factual disputes regarding how tight the handcuffs were and whether Trooper

---

[4] Trooper Tremaine disputes that he struck Doll in the chest and that Doll complained about tight handcuffs. (Doc. 33-1, at 87-91).

10

Tremaine also hit Doll or slammed Doll's body into the side of his car during the interaction. (Doc. 32-6, at 26, 29; Doc. 33-1, at 72, 74-80; Doc. 33-1, at 87-91). Second, the record is inconclusive as to whether Doll posed an immediate threat to those around him, particularly Trooper Zilen. While the record supports that Doll had been driving towards the area where Trooper Zilen was struck by another vehicle and was injured, there is no evidence that Doll was making violent threats of restarting his car and further injuring Trooper Zilen. (Doc. 32-6, at 20; Doc. 32, ¶¶ 21-26; Doc. 33, ¶¶ 12-16; Doc. 33-1, at 47-63; Doc. 37, ¶¶ 17-22). Third, the record is inconclusive as to whether Doll disobeyed officer orders. (Doc. 32-6, at 20; Doc. 32, ¶¶ 21-26; Doc. 33, ¶¶ 12-16; Doc. 33-1, at 47-63; Doc. 37, ¶¶ 17-22). There is some evidence in the record, including Doll's citation and Trooper Tremaine's deposition testimony, that suggests he continued driving toward Trooper Zilen after being told to stop. (Doc. 32, ¶¶ 21-26; Doc. 32-7; Doc. 33, ¶¶ 12-16; Doc. 33-1, at 47-63). However, there is also testimony from both Trooper Tremaine and Doll, as well as declarations by witness officers, that Doll had already stopped his car when he was violently detained by Trooper Tremaine and that he was outside of his car, not posing a threat to Trooper Zilen or anyone else when Trooper Tremaine shoved Doll in the chest and placed tight handcuffs on him. (Doc. 32-6, at 20; Doc. 32, ¶¶ 21-26; Doc. 32-3, ¶ 14; Doc. 32-4, ¶¶ 7-11; Doc. 32-5, ¶¶ 7-11; Doc. 33, ¶¶ 12-16; Doc. 33-1, at 47-63; Doc. 37, ¶¶ 17-22). In sum, reasonable jurors could disagree as to whether the extent and duration of force used by Trooper Tremaine was reasonable.

Even if Doll was non-compliant with officer orders to stop, a reasonable juror could conclude that Doll's noncompliance was not indicative of Doll posing an immediate threat to anyone's safety, especially in light of the undisputed fact that Doll had stopped his car and was no longer in the vehicle when Trooper Tremaine's abuse was ongoing. (Doc. 32-6, at 20;

Doc. 32, ¶¶ 21-26; Doc. 32-3, ¶ 14; Doc. 32-4, ¶¶ 7-11; Doc. 32-5, ¶¶ 7-11; Doc. 33, ¶¶ 12-16; Doc. 33-1, at 47-63; Doc. 37, ¶¶ 17-22); *see Santini*, 795 F.3d at 420 (finding the third *Graham* factor inconclusive where the plaintiff admitted to resisting arrest but did so nonviolently). Moreover, reasonable minds could disagree as to whether Doll would have been able to understand or see calls to stop his car when he was driving behind a large tow truck in the evening. (Doc. 32-6, at 11-12, 19-22). All this considered, the Court cannot find in favor of Trooper Tremaine at this time.

To the extent Doll premises his excessive force claim on Troper Tremaine's removal of him from his car, Trooper Tremaine cites case *Ickes v. Grassmeyer* to argue that in that case, "officers' use of force was reasonable even though the officers broke a motorist's car window and pulled the driver from the car" and here, Trooper Tremaine "did not shatter Doll's front-passenger side-window—rather, he waited for Doll to open his door, then pulled him out of the vehicle." (Doc. 31, at 6); *see* 2016 WL 4272358. *Ickes* is distinguishable from the case at bar because in *Ickes* the Court found that the officers "made every attempt—for approximately twenty minutes—to get [p]laintiff to [. . .] step out of the vehicle on his own," which he refused to do and that there was a strong possibility that the plaintiff was violent or armed and that the officers' safety was in danger. 2016 WL 4272358, at *11. Here, the record supports that Doll had already stopped his car and was in the process of exiting the vehicle on his own, not committed any serious crimes, and there remain questions of material fact as to whether he was intentionally disobeying officer orders and the degree of force that Trooper Tremaine used. (Doc. 32-6, at 20; Doc. 32, ¶¶ 21-26; Doc. 32-3, ¶ 14; Doc. 32-4, ¶¶ 7-11; Doc. 32-5, ¶¶ 7-11; Doc. 33, ¶¶ 12-16; Doc. 33-1, at 47-63; Doc. 37, ¶¶ 17-22). Courts beyond this Circuit have determined that pulling an individual from his car violently when he is neither dangerous

12

nor fleeing may constitute a use of excessive use of force. *See e.g., Wynn v. San Diego Cnty.*, No. 12CV3070 BTM-NLS, 2015 WL 472552, at *8 (S.D. Cal. Feb. 5, 2015) (denying summary judgment to an officer on an excessive force claim when a plaintiff had stopped her car and "therefore posed no threat of using the car to harm them when they initiated the use of force against her" and noting that "a reasonable jury could therefore find that the force used in removing [a plaintiff] from her car, even though not overly physically intrusive in nature, could have caused the resulting injuries [which required treatment] and amounted to unreasonable, and therefore excessive, force."); *see also McAllister v. Price*, 615 F.3d 877, 884 (7th Cir. 2010) (holding that a reasonable jury could find an officer's use of force unreasonable when the officer's tactics in removing the individual from his vehicle resulted in injuries that required treatment in a hospital and the officer "leapt to the conclusion that [the individual] was intoxicated" rather than unable to comply because he could not understand orders due to a medical condition). This rings especially true in this case, where it is undisputed that Doll had stopped his car, was obeying officers by exiting his vehicle, and could thus no longer use his car to harm them when he was forcefully detained. (Doc. 32-6, at 20; Doc. 32, ¶¶ 21-26; Doc. 32-3, ¶ 14; Doc. 32-4, ¶¶ 7-11; Doc. 32-5, ¶¶ 7-11; Doc. 33, ¶¶ 12-16; Doc. 33-1, at 47-63; Doc. 37, ¶¶ 17-22). The record also supports Doll sustained serious injuries as a result, as shown by his medical records and photographic evidence of his injured arms and face. (Doc. 32-8; Doc. 32-9, at 2-5). Because reasonable minds could differ as to whether Trooper Tremaine used excessive force in detaining Doll, summary judgment is inappropriate as to Doll's excessive force claims. Accordingly, summary judgment is **DENIED** at to the excessive force claims against Trooper Tremaine. (Doc. 30).

B. TROOPER TREMAINE'S QUALIFIED IMMUNITY

Trooper Tremaine argues that even if "the Court concludes that Tremaine used excessive force," he is entitled to qualified immunity. (Doc. 31, at 13). Doll responds that Trooper Tremaine's conduct violates clearly established law and thus Trooper Tremaine's actions cannot be protected by qualified immunity. (Doc. 36, at 12-15).

Qualified immunity is not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Specifically, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). An official who reasonably believes his conduct to be lawful is thus protected, as qualified immunity provides "ample room for mistaken judgments by protecting all but the incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010). At the time of the violation, there must be a clear legal principle that "prohibit[s] the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks and citation omitted). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Here, the parties dispute whether Trooper Tremaine's conduct violated a clearly established right. (Doc. 31, at 13-15; Doc. 36, at 12-15). "A right is [clearly] established if a reasonable actor under the circumstances would have known that his or her conduct impinged

14

upon constitutional mandates." *Broadwater v. Fow*, 945 F. Supp. 2d 574, 585 (M.D. Pa. 2013). A right may be clearly established without "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. 731, 741 (2011). "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012); *see also al–Kidd*, 563 U.S. at 742 ("We have repeatedly told courts ... not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted). Because the line between acceptable force and excessive force can be difficult to discern, an officer is entitled to qualified immunity absent existing precedent which "'squarely governs' the specific facts at issue" and adequately notifies the officer that a specific use of force is unlawful. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 15 (2015)). The case law does not have to be "directly on point," but existing precedent must have placed the question of unlawfulness "beyond debate." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 196 (3d Cir. 2021) (quoting *al-Kidd*, 563 U.S. at 741).

Because there are still questions of material fact surrounding whether Trooper Tremaine violated Doll's Fourth Amendment rights, Trooper Tremaine is not entitled to qualified immunity at this time. *See Giles v. Kearney*, 571 F.3d 318, 327-28 (3d Cir. 2009) (finding correctional officers were not entitled to qualified immunity where "a dispute of material fact" existed regarding the alleged excessive force because "the critical event was controverted"). The right to be free from excessive force while being detained, specifically

15

while being handcuffed and removed from a vehicle, was clearly established at the time of Doll's arrest. See *Kopec*, 361 F.3d at 778 ("Therefore, we hold that the right of [detainee] to be free from the use of excessive force in the course of his handcuffing clearly was established when Officer [] acted in this case, and that a reasonable officer would have known that employing excessive force in the course of handcuffing would violate the Fourth Amendment."). As discussed *supra*, the record is inconclusive as to whether Trooper Tremaine used excessive force when removing Doll from his car, causing him injuries, and tightly applying handcuffs, thus violating his constitutional rights. "In light of a clearly established right, district courts tend to deny qualified immunity when the reasonableness of the force used is factually disputed." *Guthrie v. Guthrie*, 216 F. Supp. 3d 590, 596 (W.D. Pa. 2016); *see also Dimoff v. Amarose*, No. 1:22-CV-00072, 2024 WL 3330566, at *12 (M.D. Pa. July 8, 2024) (in the context of an excessive force claim and considering genuine disputes of material fact, stating "the Court finds that this is not the appropriate time in the proceedings to resolve the issue of qualified immunity, especially because of the broad protection qualified immunity affords a government official."). Furthermore, several courts beyond this Circuit have specifically recognized that once an individual stops resisting or attempting to flee, and ceases to pose a safety threat, using excessive force to apprehend the individual constitutes objectively unreasonable excessive force. *See e.g., Raiche v. Pietroski*, 623 F.3d 30, 37 (1st Cir. 2010) (denying motion for summary judgment and finding officers not entitled to qualified immunity to officers who violently apprehended a plaintiff who failed to stop when signaled by police but was not fleeing and stating "these relatively minor infractions do not justify an officer in the violent act of physically removing a person from a parked motorcycle and slamming him into the pavement, let alone the additional force [an officer] applied when

[plaintiff] was on the ground offering no resistance."); *Wynn*, 2015 WL 472552, at *9 (denying officers qualified immunity because "[t]he [c]ourt finds that the [officers] did not make a reasonable mistake as to the legality of their actions when they forcibly removed [plaintiff] from her car" and "there are triable questions as to [. . .] when exactly [plaintiff] was injured, and how much force the [officers] used in removing her from her car."); *Merricks v. Adkisson*, 785 F.3d 553, 563 (11th Cir. 2015) ("If gratuitous force was applied after the suspect was subdued or otherwise cooperating, qualified immunity will likely not apply[. . . ]") (citing *Hicks v. Moore*, 422 F.3d 1246, 1253–54 (11th Cir. 2005)). Trooper Tremaine's motion for summary judgment on this basis is therefore **DENIED**. (Doc. 30); *see Younger v. Gross*, No. 20-878, 2023 WL 2433363, at *8 (W.D. Pa. Mar. 9, 2023) (denying summary judgment because there were questions of material fact surrounding the alleged use of force that prevented a finding of qualified immunity); *see Horninger v. Gupko*, No. 3:10-CV-02559, 2013 WL 226887, at *8 (M.D. Pa. Jan. 18, 2013) (finding defendants were not entitled to qualified immunity where "there still remains questions of material fact surrounding whether Plaintiff's constitutional rights were violated").

## IV.   CONCLUSION

Based on the foregoing, Trooper Tremaine's motion for summary judgment is **DENIED.** (Doc. 30). An appropriate Order follows.

Dated: February 18, 2025

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**